UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RONALD JOSEPH TROSCLAIR, JR., | * | CIVIL ACTION NO.: 2:19-cv-10689- |
| | * | CJB-MDN |
| Plaintiff, | * | |
| | * | |
| VERSUS | * | |
| | * | JUDGE: CARL BARBIER |
| MONSANTO COMPANY; MONSANTO | * | |
| COMPANY MANUFACTURING | * | MAGISTRATE JUDGE: MICHAEL |
| FACILITY; XL BERMUDA, LTD.; | * | NORTH |
| CATLIN INSURANCE SERVICES, INC.; | * | |
| T.H.E. INSURANCE COMPANY; 3M | * | |
| CATTLE, LLC; and RANDY JACOBS, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT, 3M CATTLE, L.L.C.'S,
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendant, 3M Cattle, L.L.C., respectfully submits the following memorandum in support of his Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

**INTRODUCTION**

In this products liability lawsuit, plaintiff Ronald Joseph Trosclair Jr. ("Plaintiff") alleges that he developed non-Hodgkin's Lymphoma ("NHL") as result of exposure to Roundup®-branded herbicides manufactured by Monsanto Company ("Monsanto"). *See, e.g.,* Petition for Damages ("Petition") ¶¶ 21, 24, 105-06 (ECF No. 1-2). Plaintiff's claims are materially similar to those currently pending against Monsanto in the multidistrict litigation in the U.S. District Court for the Northern District of California. Rather than proceed against Monsanto alone, however, Plaintiff improperly joined Louisiana defendants in an effort to defeat federal diversity jurisdiction. *See* Monsanto's Opp. to Pl.'s Mot. To Remand, ECF No. 19.

These Louisiana defendants include, 3M Cattle, L.L.C., the owner of a small farm in Luling, Louisiana, where Plaintiff allegedly applied Roundup®-branded herbicides, and a former Monsanto employee (Mr. Randy Jacobs) who allegedly supplied Roundup®-branded herbicides or unfinished concentrates of the same to Plaintiff or 3M Cattle.  *See, e.g., id.* ¶ 130.

Plaintiff's single claim against 3M Cattle, L.L.C. sounds in negligence under Louisiana Civil Code Article 2315.  Plaintiff alleges that Mr. Jacobs supplied or distributed unlabeled or improperly labeled glyphosate and/or Roundup®-branded herbicides in "repurposed containers" to Plaintiff and/or 3M Cattle that Mr. Jacobs removed from the Monsanto plant in Luling, Louisiana. *See* Petition ¶¶ 130, 132, 189, 191.  Plaintiff does not allege, however, any facts that would establish 3M Cattle, L.L.C. (nor Mr. Jacobs) owed Plaintiff a legal duty under which Louisiana imposes a heightened duty of care.  *See* Monsanto Opp. to Pl.'s Mot. to Remand at 17-21.  Nor does Plaintiff allege any factual support for the conclusion that 3M Cattle, L.L.C. had actual or constructive knowledge that Roundup®-branded herbicides allegedly could cause NHL.  *See id*.

Because Plaintiff has failed to allege any facts giving rise to a legal duty owed by 3M Cattle, L.L.C. to Plaintiff – a requisite predicate of liability under Article 2315 and Louisiana's duty-risk approach to negligence – Plaintiff has no claim as a matter of law.

Moreover, even if Plaintiff had alleged sufficient facts to state a claim under the duty-risk rubric, any recovery against 3M Cattle, L.L.C. is barred as a matter of law by the "wrongful-conduct" rule.  Courts do not compensate plaintiffs for injuries sustained in the course of their own illicit endeavors.  Here, the gravamen of Plaintiff's purported claim against 3M Cattle, L.L.C. is that Plaintiff was injured while using product removed from a Monsanto facility without the company's knowledge or approval. 3M Cattle, L.L.C. adamantly denies any such allegations or knowledge of any use of any product removed from a Monsanto facility.

Nonetheless, because Plaintiff never had permission for his alleged use of bootlegged herbicides, he cannot now seek compensation for the alleged injuries he sustained from using those products. Consequently, Plaintiff has failed to state a negligence claim against 3M Cattle, L.L.C. as a matter of law, and 3M Cattle, L.L.C. should be dismissed from this litigation with prejudice.

## ARGUMENT

The Federal Rules of Civil Procedure require plaintiffs to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although courts accept as true factual allegations, they "do[] not accept conclusory allegations, unwarranted factual inferences, or legal conclusions as true." *Gros v. Warren Props., Inc.*, No. 12-2184, 2012 WL 5906724, at *5 (E.D. La. Nov. 26, 2012) (Barbier, J.) (quotation marks omitted). "The claim must be dismissed if there are insufficient factual allegations to raise a right above the speculative level, or it is apparent from the face of the complaint that there is an insuperable bar to relief." *Pellegrin v. C.R. Bard*, No. 17-12473, 2018 WL 3046570, at *2 (E.D. La. June 20, 2018) (citations omitted).

**I.    The Negligence Claim Against 3M Cattle, L.L.C. Must Be Dismissed.**

Plaintiff has failed to state a plausible claim against 3M Cattle, L.L.C. for negligence under Article 2315 because the Petition does not allege facts to establish that a special relationship existed between 3M Cattle, L.L.C. and Plaintiff or that 3M Cattle, L.L.C. had actual or constructive knowledge that glyphosate or Roundup®-branded products allegedly created a risk of cancer or other serious adverse effects. Louisiana employs a duty-risk approach to negligence, under which a plaintiff bears the burden of proving "five separate elements: (1) whether the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) whether the defendant's

conduct failed to conform to the appropriate standard (the breach element); (3) whether the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) whether the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) whether the plaintiff was damaged (the damages element)." *Hanks v. Entergy Corp.*, 944 So. 2d 564, 579 (La. 2006). A negative answer to any of the inquiries results in a determination of no liability. *See Mathieu v. Imperial Toy Corp.*, 646 So. 2d 318, 321 (La. 1994).

Therefore, the "threshold question in any negligence inquiry is whether the defendant owed the plaintiff a duty." *Gros*, 2012 WL 5906724, at *6 (Barbier, J.) (citing *Hanks*, 944 So. 2d at 580); *see also Carroll v. Am. Empire Surplus Lines Ins. Co.*, 289 F. Supp. 3d 767, 770 (E.D. La. 2017). Whether "a legal duty exists, and the extent of that duty, depends on the facts and circumstances of the case, and the relationship of the parties," *Labarre v. Occidental Chem. Co.*, 250 So. 3d 932, 938 (La. App. 1st Cir. 2018) (citation omitted), and is "a question of law," *Hanks*, 44 So. 2d at 570.

### a. Plaintiff Has Failed To Allege Facts That Would Establish 3M Cattle, L.L.C. Owed Plaintiff A Legal Duty Recognized Under Louisiana Law.

Louisiana courts have recognized that "[n]o duty to protect against or control the actions of a third party exists unless a ***special relationship*** exists to give rise to such a duty." *Carroll v. Allstate Ins.*, 244 So. 3d 772, 776 (La. App. 2d Cir. 2017) (emphasis added) (citing *Mosley v. Temple Baptist Church of Ruston, La., Inc.*, 920 So. 2d 355 (La. App. 2d Cir. 2006)); *see also In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 838 F. Supp. 2d 497, 506 (E.D. La. 2012) ("[W]here the alleged wrongful conduct of the defendant is a failure to act or 'nonfeasance,' courts have found it necessary for some definite relationship between the parties to exist, such that social policy justifies the imposition of a duty to act upon the defendant.") (quotation marks omitted).

The traditional "special relationships" are those that "exist between parent and child; employer and employee; carrier and passenger; innkeeper and guest; shopkeeper and business visitor; restauranteur and patron; jailer and prisoner; and teacher and pupil." *Carroll*, 244 So. 3d at 777 (citing *Haskins v. State Farm Fire & Cas. Co.*, 612 So. 2d 990 (La. App. 2d Cir. 1993)).

The Petition does not allege any such relationship. Instead, the Petition alleges that Mr. Jacobs and 3M Cattle, L.L.C. took unlabeled containers of Roundup®-branded herbicides or concentrates thereof and gave them to members of the community, including Plaintiff. Petition ¶ 132. In other words, Mr. Jacobs is alleged to have "distribut[ed] . . . dangerous and improperly labeled products to the unsuspecting public," including 3M Cattle, L.L.C. and Plaintiff. *Id.* ¶ 195. Moreover, Plaintiff's unsupported allegation that the defendants should have had an elevated appreciation of the dangerous nature of chemicals in general, and glyphosate and/or Roundup® formulations particularly," Petition ¶ 190, is a conclusory allegation which this Court should not accept. *See Gros*, 2012 WL 5906724, at *8 (Barbier, J.) (denying remand motion and stating that plaintiff's allegation that employee "knew of the allegedly defective condition" was a "conclusory allegation that the court is not required to accept"); *Clark*, 2016 WL 6563437, at *1 (stating that the "court is not, however, bound to accept as true legal conclusions couched as factual allegations." (citing Iqbal, 556 U.S. at 678)). Consequently, the Petition fails to allege facts sufficient to establish 3M Cattle, L.L.C.'s negligence under Louisiana's duty-risk analysis. *See In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 838 F. Supp. 2d at 507 (noting that "in the absence of such a [special] relationship, courts generally have declined to impose an affirmative duty to take such action on behalf of another person").

### b. Plaintiff Has Failed To Allege Facts Establishing That 3M Cattle, L.L.C. Had Actual Or Constructive Knowledge Of The Alleged Defects With Roundup®-Branded Herbicides.

Article 2315 requires that for a duty to exist, 3M Cattle, L.L.C. must have actual or constructive knowledge of a defect or danger related to glyphosate and Roundup®-branded herbicides. *See Wiley v. Sanders*, 850 So. 2d 771 (La. App. 2d Cir. 2003) (holding no breach of duty for Article 2315 negligence claim where landowner did not have any knowledge of the house party at his residence that presented the potentially dangerous condition); *Pool v. City of Shreveport*, 607 So. 2d 861, 864 (La. App. 2d Cir. 1992) (considering an Article 2315 negligence claim and noting that "under negligence principles, it is *awareness* of the dangerous condition that engenders a corresponding duty to act" (emphasis in original)); *Ross v. La Coste de Monterville*, 502 So. 2d 1026, 1032-33 (La. 1987) (noting that Article 2315 negligence claim would be defeated by plaintiff's failure to prove that defendant had knowledge of the defects); *Naylor v. La. Dep't of Pub. Highways*, 423 So. 2d 674, 682 (La. App. 1st Cir. 1982) (noting that it is "actual or constructive knowledge of a risk of injury [that] gives rise to the duty" in a 2315 negligence action). To establish constructive knowledge, a plaintiff must allege and prove facts proving a defendant "in the exercise of reasonable care, should have known of the defect" alleged. *Alvarado v. Lodge at the Bluffs, LLC*, 217 So. 3d 429, 433 (La. App. 1st Cir. 2017). A failure to do so is fatal to a plaintiff's claim. *See, e.g., Gros*, 2012 WL 5906724, at *8 (Barbier, J.).

The Petition fails to allege a single fact remotely suggesting that 3M Cattle, L.L.C. had actual or constructive knowledge of the alleged dangerous condition of Roundup®-branded herbicides. In fact, the Petition alleges just the opposite. The Petition is replete with allegations – allegations which Monsanto denies – that Monsanto engaged in an alleged pervasive, decades-long cover-up that concealed from everyone the dangers and risks posed by glyphosate and

6

Roundup®-branded herbicides.[1]  Given those allegations, there is no basis to conclude that 3M Cattle, L.L.C. knew or should have known that these products allegedly created a risk of cancer or other serious adverse effects.

In addition, Plaintiff's unsupported conclusory allegation that a defendant had or should have had an elevated appreciation of the dangerous nature of chemicals in general, and glyphosate and/or Roundup® formulations particularly, Petition ¶ 190, does not salvage his claim because it is a conclusory allegation which this Court should not accept.  *See Gros*, 2012 WL 5906724, at *8 (Barbier, J.) (stating that plaintiff's allegation that employee "knew of the allegedly defective condition" was a "conclusory allegation that the court is not required to accept"); *Clark*, 2016 WL 6563437, at *1 (Barbier, J.) (stating that the "court is not, however, bound to accept as true legal conclusions couched as factual allegations." (citing *Iqbal*, 556 U.S. at 678)).  Further, this allegation is insufficient even if the Court were to credit it.  An "elevated appreciation of the dangerous nature of chemicals in general," Petition ¶ 190, cannot be conflated with having actual or constructive knowledge that Roundup®-branded herbicides can cause NHL.  *Alvarado*, 217 So.

---

[1] *See, e.g.*, Petition ¶ 32 ("Monsanto assured the public that glyphosate and/or Roundup® formulations were harmless.  In order to prove this, Monsanto championed falsified data and attacked legitimate studies that revealed the dangers of glyphosate and/or Roundup® formulations. Monsanto has led a prolonged campaign of misinformation to convince government agencies, farmers and the general population that glyphosate and/or Roundup® formulations are safe."), ¶ 71 ("Monsanto has repeatedly proclaimed and continues to proclaim that glyphosate-based herbicides, including Roundup®, create no unreasonable risks to human health or to the environment."), ¶ 115 ("Monsanto has wrongfully concealed information concerning the dangerous nature of Roundup® formulations and the active ingredient glyphosate, and further made false and/or misleading statements concerning the safety of glyphosate and Roundup® formulations."), ¶ 122 ("To this day, Monsanto has failed to adequately and accurately warn of the risks of cancer associated with the use of and exposure to Roundup® formulations and the active ingredient glyphosate."); ¶ 167(l) (alleging that Monsanto's negligence included "[a]dvertising, marketing, and recommending the use of glyphosate and/or Roundup® formulations, while concealing and failing to disclose or warn of the dangers known by Defendant to be associated with or caused by the use of or exposure to glyphosate and Roundup® formulations").

3d at 433 (to establish knowledge under Louisiana tort law, a plaintiff must allege and prove the defendant "either knew *of the defect* or, in the exercise of reasonable care, should have known *of the defect*."). Without more, Plaintiff fails to allege sufficient facts that would give rise to any duty owed by 3M Cattle, L.L.C.

### II. Plaintiff's Own Alleged Wrongful Conduct Forecloses Any Recovery Against 3M Cattle, L.L.C. As A Matter Of Law.

Plaintiff has made clear that his allegations against 3M Cattle, L.L.C. relate to the allegedly *unauthorized* distribution of Roundup®-branded herbicides or concentrated forms of the same. *See* Petition ¶ 130; *see also* ECF No. 28 at 6. In other words, Plaintiff claims he was injured by his use of stolen or bootlegged herbicide. 3M Cattle, L.L.C. denies this allegation, *see* Declaration of Randy Jacobs, ECF No. 1-7, ¶ 7, but even if the Court were to accept it as true, as it must at this stage, the allegation establishes that any recovery is barred by the "wrongful-conduct" rule, which provides that a plaintiff may not recover for injuries sustained in the course of his own illicit or illegal endeavors. Therefore, even if Plaintiff has sufficiently alleged the factual basis of some duty 3M Cattle, L.L.C. owed, Plaintiff's own allegations bar any recovery here as a matter of law.

"Generally, a plaintiff is precluded from recovering when his/her claim is based on his/her own illegal or immoral act." *Guillie v. Comprehensive Addiction Programs, Inc.*, 735 So. 2d 775, 779 (La. App. 4th Cir. 1999). Louisiana has recognized this "wrongful-conduct" rule for decades. *Bergeron v. Mumphrey*, 38 So. 2d 411, 414 (La. App. Ct. 1949) ("No principle of law is better settled than that a party to an illegal contract or an illegal transaction cannot come into a court of law and ask it to carry our the illegal contract or to enforce rights arising out of the illegal transaction." (quotation marks omitted)); *J.R. Watkins Co. v. Brown*, 126 So. 587, 590 (La. App. 1st Cir. 1930) ("It is trite in our jurisprudence that contentions originating in unlawful purposes are not to be brought into courts of justice . . . . [A]ll parties to the illegal transaction are estopped,

and the law leaves them, with their loss or gain, where it finds them." (quotation marks omitted)); *see also Price v. Purdue Pharma. Co.*, 920 So. 2d 479, 486 (Miss. 2006) (adopting the wrongful-conduct rule and baring tort liability for addiction to substances plaintiff obtained through his own deceit).

Plaintiff alleges that he was injured (developed cancer) through his use of herbicides that he allegedly received through unauthorized distribution. Plaintiff does not allege that he was unaware that the herbicide was allegedly illicitly obtained, and in fact alleges facts that suggest he was very much aware of this distribution method. *See* Petition ¶ 130 ("The glyphosate and/or Roundup® formulations were received in large containers which were not labeled as glyphosate and/or Roundup®."). In other words, Plaintiff alleges that he used Roundup®-branded herbicide without Monsanto's approval, and that his receipt of the product was through unauthorized channels. Plaintiff, just like the plaintiff in *Price*, is barred from recovering for injuries allegedly sustained while using any products he obtained illicitly or illegally.

## CONCLUSION

The Petition fails to state a plausible claim against 3M Cattle, L.L.C. First, no claim lies under Article 2315 because no facts are alleged to establish that a special relationship existed between 3M Cattle, L.L.C. and Plaintiff that gives rise to a duty. Second, no facts are alleged that could possibly establish that Mr. Jacobs and/or 3M Cattle, L.L.C. had actual or constructive knowledge that glyphosate or Roundup®-branded products allegedly created a risk of cancer or other serious adverse effects. Third, Plaintiff's recovery would be barred as a matter of law by the wrongful-conduct rule, if his allegations are taken as true. Accordingly, the Motion to Dismiss should be granted with 3M Cattle, L.L.C. dismissed from this litigation with prejudice.

DATED: June 21, 2019							Respectfully submitted,

							*/s/ Corey M. Oubre*
							COREY M. OUBRE (#28709)
							Law Offices of Corey M. Oubre, LLC
							Luling, Louisiana 70047
							Telephone: (985) 785-6620
							Facsimile: (985) 785-6628
							Email: cmoubre@oubrelaw.com
							*Attorneys for 3M Cattle, L.L.C.*

### CERTIFICATE OF SERVICE

       I hereby certify that on June 21, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF systems which will send a notice of electronic filing to all CM/ECF participants.

							*/s/Corey M. Oubre*